O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JULETA ARSHAKYAN, | ) | CASE NO. CV 06-04363 (RZ) |
| Plaintiff, | ) | |
| | ) | (1)   SUBSTITUTION OF |
| vs. | ) | DEFENDANT; |
| | ) | (2)   MEMORANDUM OPINION |
| MICHAEL J. ASTRUE, Commissioner | ) | AND ORDER |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Neither of Plaintiff's two challenges to the underlying step-two ("non-severe") denial of disability benefits is persuasive.  Accordingly, the Court will affirm.

As a preliminary housekeeping matter, the Court takes judicial notice that Michael J. Astrue became Commissioner of the Social Security Administration on February 1, 2007.  *See* http://www.ssa.gov/pressoffice/factsheets/astrue.htm.  He thus is substituted for Jo Anne B. Barnhart as Defendant pursuant to FED. R. CIV. P. 25(d)(1).

## I.

## NON-"SEVERE" FINDING

Plaintiff's first argument for reversal is that the Administrative Law Judge, in finding that none of Plaintiff's mental and physical impairments (singly or in combination) was severe, improperly discounted the conclusions of some sources – including treating

and non-treating sources – in favor of those of other examiners.  The Court disagrees with Plaintiff.

## A.   Applicable Law

### 1.   The meaning of "severe"

The regulations do not define a "severe" impairment.  Instead, they state what a *non*-severe impairment is:  one that does not significantly limit physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521.  The basic work activities are "the abilities and aptitudes necessary to do most jobs," including various physical and mental activities.  *Id.*  The requirement of having a severe impairment performs a gatekeeping function, screening out frivolous complaints.  *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  In its internal procedures, the Social Security Administration assesses an impairment as "non-severe" if it has no more than a minimal effect on the individual's ability to do basic work functions.  SSR 85-28.  This minimalist treatment has received the Courts' imprimatur.  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  Thus, the requirement that a claimant have a severe impairment has been transmogrified into a requirement that the claimant have an impairment that is not very severe at all  –  it simply must have more than a minimal effect on his or her ability to do basic work functions.

### 2.   Favoring non-treating sources over treating sources

An Administrative Law Judge may favor consultative examiners' views over those of treating physicians if he "makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (internal quotations omitted).  The Administrative Law Judge satisfies this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his or her interpretation thereof, and making findings reasonably supported by that evidence.  *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

Cir. 1989).  Moreover, an "ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004).

**B.    Analysis**

Plaintiff asserts that she has both mental and physical impairments that should have been found "severe."

**1.    Mental impairments**

The Administrative Law Judge found that Plaintiff had anxiety and depressive disorders, not otherwise specified, but that neither was "severe."  *See* Administrative Record ("AR") 35 (findings 2, 3).  As discussed below, the judge bluntly questioned the bona fides of the psychologist upon whom Plaintiff relies and instead accepted the views of two other examiners, one of whom expressly found Plaintiff to be malingering.

Plaintiff points to an evaluation by psychologist David Lipsitz, Ph.D. to support her challenge to this finding.  (Plaintiff implicitly concedes that Dr. Lipsitz is an "examining source" and thus accorded somewhat less weight, ordinarily, than the "treating sources" whom she cites in support of a severe-*physical*-impairments finding, as discussed in the section below.  *See* Pl.'s Reply Br. at 6-7.)  Dr. Lipsitz's report recites that it is based on a four-hour interview and six hours of testing in November 2003.  AR 153.  As summarized by the Administrative Law Judge, the psychologist –

> administered some objective psychological tests . . . . He did not
> review or seek verification from other medical, psychological or
> lay observations prior to completing his report.
>
> As for the claimant's attitude and behavior, Dr. Lipsitz
> commented that [she] did not answer the questions appropriately

at times and required re-questioning, although she appeared to put forth adequate effort ([AR 155]). The doctor also reported that the claimant's good performance on the Bender-Gestalt test indicated that the claimant had no evidence of an organic disorder. However, Dr. Lipsitz stated that "he" [meaning Plaintiff] scored a 4 indicating moderate cognitive impairment ([AR 155]). While this [reference to "he" instead of "she"] may be a simple clerical error, the form of the report appears to be manufactured from a template, diminishing the contents thereof. With respect to the WMS [Wechsler Memory Scale test], Dr. Lipsitz reported that the claimant's score indicated a person with mild organic damage or severe depression/anxiety that might impair cognitive functioning ([AR 157-58]).

AR 22-23. The opinion further noted that Dr. Lipsitz's tests reflected "severe levels of depression" (Beck Depression Inventory II test), "a depressed mood" (Rorschach and Thematic Apperception tests) and "a severe level of anxiety" (Beck Anxiety Inventory). AR 23; *see* AR 155-57 (cited test results). The underlying opinion does not mention Dr. Lipsitz's view that Plaintiff scored 35 on the American Psychiatric Association's scale called General Assessment of Functioning, *see* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 1994) ("DSM-IV") at 32. Such a rating, between 31 and 40, means that a person has "some impairment in reality testing or communication . . . or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood." *Id*.

Almost a year later, Dr. Lipsitz "submitted a summary psychological evaluation" stating –

///

///

- 4 -

> that the claimant had been seeing his colleague, Dr. [Wayne]
> Taubenfeld[,] [Ph.D.], upon whose findings he based his
> opinion. Dr. Lipsitz again diagnosed the claimant with major
> depression, severe, with psychosis, post-traumatic stress
> disorder, and panic disorder with agoraphobia,

which were precisely Dr. Taubenfeld's diagnoses earlier in 2004. AR 24; *see* AR 248 (Taubenfeld notes), AR 243-46 (Lipsitz's subsequent opinion). Skeptical, the Administrative Law Judge noted some matters that troubled him, namely –

> that these [two] practitioners occupy the same office space in a
> coordinated business environment. Furthermore, it appears that
> the claimant had been referred to these examiners after the
> claimant had filed her first application.

AR 24.

Two other mental examiners, upon whom the Administrative Law Judge ultimately relied, examined Plaintiff in April 2004 and found her mental problems to be much milder; indeed, one found her to be faking. Psychiatrist Dharmapalan Pillai, M.D., "found no evidence of cognitive deficits or of the inability to concentrate." AR 23; *see* AR 191-96. The doctor diagnosed only a mild depressive disorder and assessed Plaintiff's GAF at 65. AR 23; *see* AR 194. Particularly significant for purposes of the "severity" determination was Dr. Pillai's "Functional Assessment," which gauged Plaintiff's ability to perform work-related mental tasks. Dr. Pillai found Plaintiff to be either unimpaired or only mildly impaired in eight categories – although the doctor also found Plaintiff incapable of handling funds. AR 195.

Lastly, the most skeptical mental evaluation in this record was provided by psychologist Mark Pierce, Ph.D. Although he did find Plaintiff to be somewhat depressed,

Dr. Pierce frankly labeled Plaintiff a "classical" malingerer – for example, he noted her "non-tearing crying," AR 250 – at least as to the degree of her symptoms.  As summarized by the Administrative Law Judge,

> Dr. Pierce consistently reported that the claimant put forth a sub-optimal effort throughout the evaluation, which resulted in test performances that significantly underestimated the claimant's actual levels of functioning.  He commented that the claimant was minimally responsive at estimated malingered levels throughout the examination, particularly given her ability to give an organized and spontaneous history during the interview ([AR 253]).
>
> In particular, Dr. Pierce noted that the claimant obtained an initial raw score of five out of fifteen and a second effort of eight out of fifteen on the Rey 15-Item Test.  In his opinion, this showed compelling evidence that the claimant deliberately exerted a sub-optimal effort, such that she made a fairly classical malingered effort ([AR 254]).  Dr. Pierce also noted that the claimant's scores on the TONI-III [Test Of Non-Verbal Intelligence III] showed a malingered underperformance with testing ([AR 255]).  Further, Dr. Pierce found that the claimant performed with severely deficient effort on the entire Trails A and B Test ([AR 255]).
>
> Dr. Pierce concluded that the claimant consistently underperformed at malingered levels with all testing, such that his diagnostic and prognostic impressions were conservatively rendered.  However, given the test results and the clinical data, Dr. Pierce diagnosed the claimant with a depressive disorder, not

otherwise specified (post-traumatic features reported, currently medicated) and malingering (gross underperformance of *all administered testing*, after a much more capable history-giving session).

AR 24-25 (emphasis added); *see* AR 29-30 (contrasting Lipsitz's opinion with opinions of Pierce and Pillai).

In sum, even if Dr. Lipsitz were viewed as a "treating source" – a label that Plaintiff appears careful not to apply, perhaps in light of the fact that he saw her only two or three times – then the Administrative Law Judge's partial rejection of his (Lipsitz's) conclusions in favor of the views of Drs. Pillai and Pierce, who conducted and relied on independent testing, still withstands legal scrutiny. *See Andrews . Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The underlying opinion noted several reasons, supported by substantial evidence, for discounting Dr. Lipsitz's view. *See* AR 29-30. Some of these reasons are less persuasive – such as the mere fact that Plaintiff was referred to and first visited Dr. Lipsitz (and his office-mate) only after she filed her claim – for they do not *per se* support an inference of bias. The Court also is not much persuaded by the possibly inadvertent error by Dr. Lipsitz in repeatedly referring to the female Plaintiff as "he" and "his" and the suggestion that Dr. Lipsitz therefore relied on boilerplate to an improper degree. *See* AR 30. Moreover, the fact that Dr. Pillai found Plaintiff incapable of handling funds is somewhat troubling. Even if she is not disabled by her mental ailments, the funds-handling restriction may suggest a more-than-minimal effect on her ability to perform at least *some* work-related functions (although sewing, the job to which the Administrative Law Judge found her capable of returning, would not involve the handling of funds).

Other reasons, however, are more persuasive, such as Dr. Lipsitz's apparently uncritical parroting of his office-mate's diagnoses. *See* AR 29. The Administrative Law Judge also found that, because Plaintiff's subjective complaints were less than fully credible – a separate finding that Plaintiff does not contest here – it was proper to discount

Dr. Lipsitz's conclusions, which were based heavily on those subjective complaints.  AR 29; *see* AR 30-31 (credibility discussion).  Perhaps most persuasive is the fact that Plaintiff received remarkably better evaluations from Drs. Pillai and Pierce, on similar batteries of psychological tests, only a few months after her initial evaluation by Dr. Lipsitz.  Plaintiff does not take issue here with the soundness of Dr. Pillai's or Dr. Pierce's conclusions.  Rather, her argument appears to be limited to asserting that the underlying opinion should not have preferred those opinions or gave an inadequate explanation for doing so.  But because the Administrative Law Judge properly set "out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[ed] his interpretation thereof, and ma[de] findings" that are supported by the record, *see Magallanes*, *supra*, 881 F.2d at 751 (internal quotation omitted), the underlying opinion is sound.

### 2.     Physical impairments

The Administrative Law Judge found that Plaintiff suffered from the following medically determinable, but not severe, impairments:  "uterine fibroids, status post-hyterectomy, mild diabetes mellitus, chest pain due to lumpectomy, hypertension, history of dizziness, generalized osteopenia, mild cervical spondyleses, slight dextroscoliosis [and] obesity[.]"  *See* AR 35 (finding 2).  He explained as follows, however, why he rejected the opinions of Plaintiff's two treating doctors, which opinions suggested at least a "severe" finding for one or more physical impairments:

> In making this [non-severe] determination, I rejected the
> opinions of the claimant's treating physicians, Dr. [Noobar]
> Janoian ([AR 177-90]) and Dr. [Herman] Davis ([AR 232-36]).
> While generally more weight is given to the opinions from the
> treating sources . . . , here, the opinions . . . are not supported by
> the objective evidence.

Dr. Janoian opined that the claimant was temporarily disabled from January 8, 2004 through July 8, 2004 ([AR 181]). However, the record reflects that he only saw the claimant through March 5, 2004 ([AR 178]). Most of his records demonstrate that he personally did not see the claimant on the dates when she alleged she was treated. This doctor may have supervised his staff, but most of the entries in the record were produced administratively or by non-medical personnel.

In addition, I note that the claimant's inability to work for any period of time is an opinion on an issue reserved to the Commissioner . . . . [Moreover, even if credited,] Dr. Janoian's opinion . . . covers only a six month period of time, which falls short of the required 12-month duration.

Further, while I considered Dr. Davis's opinion, I gave it little weight. Dr. Davis opined that the claimant could lift or carry up to ten pounds occasionally; she could stand for one hour in an eight hour workday; she could walk for one hour in an eight hour workday; she could sit for two hours in an eight hour workday; she could occasionally bend, climb, and reach above shoulder level, but never squat, kneel, or crawl; she had moderate manipulative limitations; and could not use either of her feet for repetitive movements as in pushing and pulling of leg controls ([AR 234-35]).

Dr. Davis's opinion is not supported by the objective evidence. In fact, the evaluation is completely inconsistent with the record as a whole, and with Dr. Davis's own treatment records. . . . [T]he records from Dr. Davis contain very few objective findings with no progress notes whatsoever. Dr.

Davis's only abnormal findings pertained to the claimant's subjective complaints of dizziness, unsteady blood pressure, palpitations, chest pain, back pain, and stiffness. The objective findings in these areas were only mild or show no significant abnormalities. [Discussion of x-ray (spinal curvature), bone density, EKG and blood panel test results, all showing mild and/or unconfirmed abnormalities, omitted.] There are no progress notes, reports of examinations, or any other objective findings from Dr. Davis [besides the mild or unconfirmed ones previously noted]. Thus, the objective findings do not come close to objectively supporting the functional limitations ascribed to the claimant. Indeed, it is apparent that Dr. Davis based his opinion on the subjective history of the claimant's conditions as related by the claimant. As discussed more fully below, I find the claimant's subjective allegations to be unreliable . . . .

AR 27-28; *see* AR 237 (bone densitometry report showing osteopenia but not osteoporosis), 238 (EKG "unconfirmed analysis" suggesting abormality "possibly due to myocardial ischemia"), 239 (x-ray report showing mild cervical spondyleses and slight scoliosis), 240-42 (blood test results, largely normal but with borderline high cholesterol). The Administrative Law Judge preferred the findings of three consultative examiners, who conducted independent testing and found that Plaintiff had few functional limitations, none of which would preclude her from returning to her past work as a sewing machine operator. *See* AR 23-24, 26; *see also* AR 188-203 (records from Adi Klein, M.D.),231 (Drs. Harris and Feder). Although Plaintiff disagrees with the consultative examiners, she does not and cannot contend that their opinions do not supply substantial evidence.

The Administrative Law Judge made "findings setting forth specific, legitimate reasons for" rejecting the treating sources' opinions "that are based on substantial evidence in the record," *Connett*, *supra*, 340 F.3d at 874, with the most prominent cited reason being that the opinions were "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson*, *supra*, 359 F.3d at 1195. The non-severe finding thus does not merit reversal.

## II.

## ABILITY TO RETURN TO PRIOR WORK

Plaintiff next challenges the Administrative Law Judge's alternative finding that, even if her impairments were viewed as severe, Plaintiff still is not disabled because she is capable of returning to her prior work as a seamstress. This challenge is moot due to the Court's conclusion, above, that the non-severe findings were sound.

## III.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.


DATED:   July 18, 2007


_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE